UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Tyrone Combs, II,

      Plaintiff,

v.                                    Case No. 12-11539

City of Pontiac, Steven Troy,
Timothy Morton, Craig Pesko,            Honorable Sean F. Cox
Ruben Garcia, and Scott McDonald, in
their individual and official capacities,

      Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This is a civil rights case. Plaintiff Tyrone Combs II has brought a section 1983 claim and other state law claims against the City of Pontiac ("the City") and Officers Garcia, McDonald, Pesko, and Morton and Sergeant Troy of the Pontiac Police Department ("Officer Defendants" or "Officers") because he claims they violated his Fourth Amendment right to be free from unreasonable seizures when the Officer Defendants used excessive force in arresting Plaintiff during a raid.

This matter is before the Court on Defendants' Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56. Defendants have alleged that the Officers are entitled to qualified immunity and governmental immunity, that Plaintiff cannot maintain a claim for gross negligence, that Plaintiff's claims cannot proceed because he pleaded guilty to resisting arrest, and that the City of Pontiac cannot be liable under section 1983 because its policies did not manifest deliberate indifference to its citizens' welfare. For the reasons set forth below, this Court GRANTS

IN PART and DENIES IN PART Defendants' Motion for Summary Judgment.

## BACKGROUND

On April 9, 2010, Plaintiff went to the JJ Barber Shop in Pontiac, Michigan. (Combs Dep., attached to Pl.'s Resp. at Ex. C, p. 38). Plaintiff testified that he had to wait to get a seat at the barber shop, so he stood outside of the shop and sipped on some cognac. (Pl.'s Resp. At Ex. C, p. 38). Plaintiff testified that as he was standing outside of the barber shop, he saw a person "come around the corner with an assault rifle, ski mask, and all black . . . ." (Pl.'s Resp. At Ex. C, p. 39).

Plaintiff instantly started running. (Pl.'s Resp. at Ex. C, p. 39). Plaintiff testified that at the time, he did not know what was happening or who the individual was who was approaching him; he thought it could have been a robber or a murderer. (Pl.'s Resp. at Ex. C, p. 45). Plaintiff continued running down an alley until he heard somebody yelling at him: "Stop or I'm going to shoot you - police." (Pl.'s Resp. at Ex. C, p. 47). Plaintiff testified that he immediately stopped running and laid down on his stomach. (Pl.'s Resp. at Ex. C, p. 49). Sometime prior to laying down in the alley, according to Plaintiff, he dropped a vest he was wearing. (Pl.'s Resp. at Ex. C, p. 75). City of Pontiac Police officers later found crack cocaine and a scale inside the vest. (Dep. of Officer Garcia, attached to Pl.'s Resp. at Ex. B, p. 26).

Plaintiff testified as to what occurred immediately after he laid down in the alley, and for the following few minutes thereafter:

> I was laying face down with my arms out. My face was towards the ground. One of the officers jams his knee into the back of my head, and my knee slams – I mean my face slams into the concrete. I instantly like seen white, and I was like becoming – like started coming in and out of consciousness. When he did that, soon as he did that, one of them, both of them, I don't know which, put my hands back and either zip tied or handcuffed my hands.
> After they did that, all I seen was white lights from all the strikes. They kept

2

striking me in the head over and over and over, and I was begging them to stop
striking me in the head.

I was begging them literally to stop beating me, because once I was face down
and he jammed his knee into my head . . . and they started hitting me on the right side
of my face, so I turned my head like this, and they hit me on the left side of my face.
I kept doing that, and they just kept hitting me in my head. I'm begging them,
pleading them to stop beating on me.

All I could see was bright white lights from them hitting me, and red from the
blood, because I had blood in my eyes. . .

So I'm thinking – it's like I was in a dream or a movie or something. I'm like, Get
this dog off me. So the dog gets off my arm, and the dog's just barking, barking,
barking and I'm like thinking like I'm in a dream . . .

So they snatched me off the ground, and I can't hardly walk, so I'm half
stumbling. They're half dragging me back this way, back towards the barber shop .
. .

I'm asking [Officer Morton] like Why? Why the [expletive] did you just do
that to me? And he's like, You should never run from the police . . .

He hit me with something, I think it was a flashlight . . .

Hit me with something in my ribs, and I like buckled over, and I was like –
they're still dragging me, I can't even walk now because I can't breathe . . .

So they drag me back in front of the barber shop, and when we get back to the
barber shop – they had knocked a hole, now I know it's the police.

So when we got back, they put me against that glass with my back facing the
glass, and there's a big hole in the glass right here. So when they stood me against
the glass, the glass like sliced my hand open right here, and I'm like Oh, my God.
Now I feel blood pouring out of my hand.

(Pl.'s Resp. at Ex. C, p. 51-52). Plaintiff alleges that the arresting officers, Officer Morton and

Sergeant Troy, hit him in the head "at least ten, and it may have been more than twenty" times. (Pl.'s

Resp. at Ex. C, p. 59). Plaintiff maintains that he never resisted the officers' efforts to arrest him.

(Pl.'s Resp. at Ex. C, p. 68 ("I know for a fact that I did not resist those officers.")). Plaintiff was

thereafter transported to the Pontiac Osteopathic Hospital for treatment of his injuries. (Pl.'s Resp.

at Ex. C, p. 69-70). Plaintiff was later transported to the Oakland County Jail. (Pl.'s Resp. at Ex.

C, p. 69-70).

The Defendants, specifically the Defendants who arrested Plaintiff, Officer Morton and

3

Sergeant Troy, tell a somewhat different version of the events that took place on April 9, 2010. Defendants maintain that Sergeant Troy and Officer Morton were assisting Officer Ferguson in executing a Narcotics Enforcement Team ("NET") search warrant at JJ's Barber Shop in Pontiac, Michigan. (Troy's Police Report, Def.'s Br. at Ex. 1).  Officers McDonald and Garcia were Special Response Team ("SRT") officers who were on the scene to assist the NET officers with gaining entry into the barber shop.  (Troy Dep., attached to Def.'s Br. at Ex. 2 p. 40).  According to Officer Garcia, the SRT officers had the word "POLICE" in large white letters on their vests.  (Garcia Dep., attached to Def.'s Br. at Ex. 4, pp. 19-21).  Sergeant Troy and Officer Morton admitted that they were in plain clothes at that time.  (Troy Dep., Defs.' Br. Ex. 2, at 74).  At some point during the raid, Officer Pesko, the canine handler, was dispatched to the barber shop with his canine to sniff out additional drugs.  (Ferguson Report, attached to Def.'s Br. at Ex. 15).

Sergeant Troy testified that Plaintiff "ran him over" in the course of fleeing the barber shop, which allegedly knocked Sergeant Troy to the ground.  (Troy Dep., Def.'s Br. Ex. 2, at pp. 45-47). Officer Morton testified that he saw Plaintiff run into Sergeant Troy.  (Morton Dep., attached to Def.'s Br. At Ex. 3, p. 36).  Sergeant Troy testified that he had scrapes and a twisted left knee due to Plaintiff running into him.  (Troy Dep, Def.'s Br. at Ex. 2, p. 49).

At some point, Officer Morton joined Sergeant Troy in pursuit of Plaintiff.  Officer Morton claims that Plaintiff stumbled and fell in the alley, in contrast to Plaintiff's testimony that he stopped running and laid down voluntarily. (Def.'s Br. at Ex. 3, p. 41).  Officer Morton further testified that Plaintiff was trying to escape from the officers and was fighting with Sergeant Troy in the process. (Def.'s Br. at Ex. 3, p. 44).  Officer Morton testified that Sergeant Troy could not get control of Plaintiff to handcuff him.  (Def.'s Br. at Ex. 3, pp. 44, 47).  Officer Morton testified that he then

4

struck Plaintiff in the head with Sergeant Troy's prep radio.  (Def.'s Br. at Ex. 3, p. 49).  Officer Morton testified that when that blow did not calm Plaintiff down, Sergeant Troy struck Plaintiff in his face with a closed fist.  (Def.'s Br. at Ex. 3, p. 51).

Sergeant Troy testified that he hit Plaintiff not once but "a couple times" after Plaintiff was hit with the prep radio.  (Troy Dep., Def.'s Br. at Ex. 2, p. 61).  Officer Morton testified that he and Sergeant Troy told Plaintiff to stop resisting over and over again, but he would not comply.  (Def.'s Br. at Ex. 3, p. 52).  Eventually, Sergeant Troy and Officer Morton were able to handcuff Plaintiff. (Def.'s Br. at Ex. 3, p. 53).  Shortly thereafter, Officer Morton testified that Plaintiff was walked back to the area in front of the barber shop and sat down on the curb.  (Def.'s Br. at Ex. 3, p. 57).

Defendants Morton, Troy and Garcia each testified that they rarely, if ever, received a performance evaluation from Pontiac Police Department.  (*See* Pl.'s Resp. at p. 18, *citing* Morton Dep., Pl.'s Resp. at Ex. F, p. 22; Troy Dep, Pl.'s Resp. at Ex. A, p. 19; Garcia Dep., Pl.'s Resp. at Ex. B, p. 13).  Furthermore, Officer Morton testified that he was trained on the proper use of force, although he could not recall when.  (Pl.'s Resp. at Ex. F, pp. 22, 25-26).  Defendant Troy could not remember the last use of force training he had at Pontiac Police Department.  (Pl.'s Resp. at Ex. A, pp. 25-26).  Defendant Garcia could not remember his last use of force training either, but was sure he had received some training on the subject.  (Pl.'s Resp. at Ex. B, p. 16).

The parties deposed two other individuals, Dominic Paterra and Anthony Hill, who testified that they each witnessed the altercation between Plaintiff, Sergeant Troy and Officer Morton.  (*See generally* Pl.'s Resp. at Exs. D and E).  Both of these eyewitnesses testified that they saw a police dog latch onto Plaintiff's arm while he was lying on the ground.  (Paterra Dep., attached to Pl.'s Resp. At Ex. D, pp. 84-85, 88; Hill Dep., attached to Pl.'s Resp. At Ex. E, pp. 15, 41).  Plaintiff's

medical records from the hospital indicate that he complained of being bitten by a dog.  (Oakland County Sheriff's Office Jail Clinic Records, attached to Pl.'s Resp. at Ex. K).

In October 2010, Plaintiff eventually plead guilty to resisting arrest in violation of M.C.L. 750.81d(2).  (Def.'s Resp. at Exs. 13 and 14).

## STANDARD OF DECISION

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1984), *quoting* FED. R. CIV. P. 56(c).

"The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case."  *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  "The moving party may meet its burden by showing that the nonmoving party lacks evidence to support an essential element of its case."  *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993).  The plaintiff must come forth with more than a "mere scintilla of evidence" in support of his or her position in order to survive summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  "The court must view the evidence, all facts, and any inferences that may permissibly be drawn from the facts in the light most favorable to the nonmoving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

**Are Plaintiff's Claims Against The Individual Officers Barred By Qualified Immunity?**

Defendants argue that the Plaintiff's claims of excessive force against the officers, brought

2:12-cv-11539-SFC-RSW   Doc # 69   Filed 01/14/14   Pg 7 of 19   Pg ID 741

under 42 U.S.C. § 1983, are barred by the doctrine of qualified immunity. Plaintiff "bears the burden of showing that defendants are not entitled to qualified immunity." *Chappell v. City Of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009*)*, *citing Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005).

The doctrine of qualified immunity protects government officials, including police officers, from civil liability for their actions unless "in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir. 2010), *citing Jones v. Byrnes*, 585 F.3d 971, 974 (6th Cir. 2009). In order to prevail on his section 1983 claim, Plaintiff must show that 1) each officer violated one of his constitutional rights, and 2) that right was clearly established at the time of the violation. *Id.* A right is "clearly established" if "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*, *citing Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009).

In this case, the second prong of the analysis is easily resolved. In the context of an excessive force claim, the Sixth Circuit has held that the right to be free from excessive force is a clearly established right for purposes of the qualified immunity analysis. *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001); *see also Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009) ("Under this circuit's existing case law, there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others.").

The next area of inquiry is whether the officers knew they were acting in violation of Plaintiff's clearly established constitutional right. "The question of whether the reasonable officer

7

would have known his conduct violated clearly established constitutional rights can be answered by the initial inquiry of whether the officer's use of force was objectively reasonable." *Kostrzewa*, 247 F.3d at 641. Therefore, whether this Court should grant qualified immunity depends on whether the officer used excessive force, i.e. whether the officer's use of force was objectively reasonable. *Id.*, *citing Martin v. Heideman*, 106 F.3d 1308, 1312-13 (6th Cir. 1997). "To put it another way, if there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable officer would have known such conduct was wrongful." *Kostrzewa*, 247 F.3d at 642.

>    a.   **Did The Arresting Officers, Sergeant Troy and Officer Morton, Act In An Objectively Reasonable Manner?**

Excessive force claims are analyzed under the Fourth Amendment's protection against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989). In determining whether excessive force was used, the Court must ask whether the officer's actions were objectively reasonable, in light of the totality of the circumstances. *Id.* at 396. The "totality of the circumstances" includes the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting or attempting to avoid arrest by flight. *Id.* The Court should judge reasonableness from the perspective of a reasonable officer at the scene "rather than with 20/20 vision of hindsight . . . ." *Id.* at 396-97.

Defendants Morton and Troy admit that they used force to arrest Plaintiff, including hitting him in the head with a "prep radio" and striking him once in the face with a closed fist. (Pontiac PD Report, attached to Def.'s Br. at Ex. 1; *see also* Photo of Prep Radio, attached to Def.'s Br. at Ex. 10). Defendants argue, however, that all of the *Graham* factors justify their use of force. Defendants

argue that drug trafficking is a serious crime, that Plaintiff posed an immediate threat because he assaulted Sgt. Troy and refused to be handcuffed, and that Plaintiff actively fled the barber shop when the police arrived and further attempted to resist arrest once he was caught. (Defs.' Mo. at 12).

Plaintiff maintains that none of the *Graham* factors justify Defendants' actions. Plaintiff denies resisting arrest, even though he plead guilty to that charge in state court. (*See* Combs Dep, Pl.'s Ex. C, at 68:5-6 ("I know for a fact that I did not resist those officers."); (*but see* Combs Guilty Plea, attached to Def.'s Br. at Ex. 14). Plaintiff also avers that he was not engaged in a serious crime when the Defendant officers initially arrived at the barber shop, and that he was not armed or violent whatsoever toward the officers. (Pl.'s resp. at 10).

Plaintiff argues that the arresting officers acted unreasonably because they used excessive force on him after he was handcuffed and subdued. (Pl.'s Resp. at 6, 11). He states that "[a]ny reasonable person would have recognized that his acts of force against a citizen while he was compliant **and subdued in handcuffs** violated those rights [to be free from excessive force]." (Pl.'s Resp. at 6) (emphasis in original). Plaintiff's deposition testimony describes the excessive force he claims Defendants Morton and Troy used:

> A: . . . [one] of them, both of them, I don't know which, put my hands behind my back and either zip tied or handcuffed my hands.
>
> After they did that, all I seen [sic] was white lights from all the strikes. They kept striking me in the head over and over and over, and I was begging them to stop striking me in the head.
>
> I was begging them literally to stop beating me, because once I was face down and he jammed his knee into my head, my face went like this, and they started hitting me like this in the right side of my face . . . and they hit me on the left side of my face . . .
>
> All I could see was bright white lights from them hitting me, and red from the blood, because I had blood in my eyes . . .
>
> Just kept beating me, and I kept asking them to stop. They finally stopped. I was like in an out of consciousness. I was like unconscious, I wake up, and there's

9

a dog on my arm, like the dog is biting my arm.

(Combs Dep., attached to Pl.'s Resp. at Ex. C, p. 50-51).

Viewing the evidence in the light most favorable to the Plaintiff, this Court finds that there is a genuine issue of material fact as to whether the arresting officers' use of force in their encounter with Plaintiff was objectively reasonable. Even if all *Graham* factors are satisfied, as Defendants argue, that would only justify their use of force in obtaining the arrest of Plaintiff. The officers' alleged use of excessive force against Plaintiff after he was handcuffed and compliant was objectively unreasonable, and a reasonable officer would have known as much. Furthermore, Defendants' cited cases are distinguishable because all of them refer to allegations of excessive force used to effectuate an arrest, not post-arrest beating. (Defs.' Br. at 12-16). This Court DENIES Defendants Morton and Troy's Motion for Summary Judgment on qualified immunity grounds.

**b.    Were Officer McDonald's, Officer Garcia's, and Officer Pesko's Actions Objectively Reasonable?**

Plaintiff claims that Officers McDonald, Garcia and Pesko, although not immediately involved in the arrest and alleged post-arrest beating, can be held liable under section 1983 for failing to intervene when they saw Officer Morton and Sergeant Troy beating Plaintiff. Plaintiff alleges that Officer Pesko can also be held liable for failing to control the police canine that allegedly bit his arm during the arrest.

As Defendants point out, "[a] police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." (Defs.' Br. at 18) (*citing Kowolonek v. Moore*, 463 Fed. App'x 531, 539

10

(6th Cir. 2012). Defendants argue in the first instance that no excessive force was used. As previously mentioned, there is a genuine issue of material fact as to that issue.

Defendants next argue that there is no evidence that Officers Garcia and McDonald witnessed any use of excessive force. (Defs.' Br. at 18). Defendants further claim that Officer Pesko did not even arrive on the scene until after Plaintiff was already in custody in a police vehicle. (*See* Ferguson Report, Def.'s Br. At Ex. 15). At his deposition, Officer Pesko did not recall being dispatched to the barber shop on the date at issue. (Pesko Dep., Pl.'s Resp. at Ex. H, p. 18:9-11).

In his response brief, Plaintiff points to no evidence or testimony that places Officers McDonald and Garcia at the scene of the arrest such that any of them could have witnessed Plaintiff allegedly being beaten by Officer Morton and Sergeant Troy. Without such evidence, Plaintiff's claims for failure to intervene cannot survive as to Officers McDonald and Garcia. This Court GRANTS Defendant Officers McDonald and Garcia's Motion for Summary Judgment because they are entitled to qualified immunity.

As for Officer Pesko, however, this Court finds that there are genuine issues of material fact as to whether Officer Pesko was present during the arrest, and whether Officer Pesko allowed his police canine to attack Plaintiff after he was subdued. Two eyewitnesses corroborate Plaintiff's claim that he suffered a dog bite, as do the Oakland County jail medical records. (Paterra Dep., attached to Pl.'s Resp. At Ex. D, pp. 84-85, 88; Hill Dep., attached to Pl.'s Resp. At Ex. E, pp. 15, 41; Oakland County Sheriff's Office Jail Clinic Records, attached to Pl.'s Resp. at Ex. K). Further, it is undisputed that Officer Pesko was present during the raid at some point, but it is unclear exactly when he arrived. (Ferguson Report, attached to Def.'s Br. at Ex. 15). Based on this evidence, construed in Plaintiff's favor, this Court DENIES Defendant Officer Pesko's Motion for Summary

11

Judgment on the basis of qualified immunity.

**Are Plaintiff's Excessive Force Claims Meritless Because He Was Convicted Of Resisting Arrest/Assaulting A Police Officer In Violation Of MCL 750.81d(2)?**

Defendants argue that Plaintiff's excessive force claims against the Officers cannot be maintained because Plaintiff pleaded guilty to violating M.C.L. 750.81d(2) on October 11, 2010. (Defs.' Mo. at Ex. 14). M.C.L. 750.81d(2) states that "[a]n individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a bodily injury requiring medical attention or medical care to that person is guilty of a felony . . . ." On his guilty plea form, Plaintiff wrote that "[o]n April 9, 2010, [he] was out in front of Class Salon in Pontiac, Michigan. As the NET team began their raid on the salon, [he] ran. During the police officers attempt to stop [him], one of the officers was injured. Cocaine was found in [his] jacket on arrest." (Def.'s Mo. at Ex. 14).

In support of their argument, Defendants rely heavily on the case of *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck v. Humphrey* stands for the proposition that a claim for damages under 42 U.S.C. § 1983 cannot be maintained if it would "necessarily imply the invalidity of a prior conviction" that has not already been invalidated. *Sullivan v. Regents of the Univ. of Mich.*, 2009 WL 2915787 at *6 (E.D. Mich. 2009) (Cox, J.).

Plaintiff argues that this Circuit has already considered *Heck* as it relates to convictions under M.C.L. 750.81d, (Pl.'s Resp. at 7, *citing Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010)), and has concluded that a section 1983 excessive force claim can be maintained against an officer even if the plaintiff pleaded guilty to resisting arrest because "nothing in the text of [M.C.L. 750.81d] . . . suggests that the state must prove as an element of the crime that the police did not use excessive

12

force." *Schreiber*, 596 F.3d at 334. "The lawfulness of an arrest is no longer an element of the charge of resisting and obstructing." *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 769 (E.D. Mich. 2009). In other words, Plaintiff appears to be arguing that a conviction for resisting arrest under M.C.L. 750.81d(2) and a damages suit for excessive force under section 1983 are not mutually exclusive.

Defendants responds by pointing to recent Michigan Supreme Court case law whereby that court held that M.C.L. 750.81d does not abrogate the common law right to "resist unlawful arrests or other unlawful invasions of private rights." *People v. Moreno*, 491 Mich. 38, 58; 814 N.W.2d 624 (2012). Defendants state that *Moreno* requires that a defendant charged with violating M.C.L. 750.81d "must raise as a defense that the officer was applying an unreasonable use of force, so as to justify the resistance." (Def.'s Reply at 2).

This district has considered and clarified the effect of *Moreno* on section 1983 cases where 750.81d convictions are at issue. In *Henry v. City of Eastpointe Police Dept.*, 2013 WL 1395851 at *4 (E.D. Mich. 2013), *adopted in part*, 2013 WL 1395847 (E.D. Mich. 2013), Magistrate Judge Paul J. Komives explained that

> Defendants correctly note that, under Michigan law as recently clarified by the Michigan Supreme Court, the lawfulness of the officer's arrest is an element of the offense that must be proved by the prosecution. *See People v. Moreno*, 491 Mich. 38, 51–52, 814 N.W.2d 624, 631 (2012). However, at the time of plaintiff's state court trial the prevailing view was reflected in the Michigan Court of Appeals's decision in *People v. Ventura*, 262 Mich.App. 370, 686 N.W.2d 748 (2004), which held that the legality of an arrest is not an element of § 750.81d. *See Ventura*, 262 Mich.App. at 375–77, 686 N.W.2d at 751–52. The Michigan Court of Appeals adhered to this view up until the Michigan Supreme Court's decision in *Moreno*, a time period which included plaintiff's trial. *See Brooks v. Rothe*, 577 F.3d 701, 707 (6th Cir.2009); *People v. Corr*, 287 Mich.App. 499, 509, 788 N.W.2d 860, 867 (2010). Thus, under the law governing at the time of plaintiff's trial, it was not necessary for the prosecutor to prove that the arrest was lawful. Defendants have provided no

evidence, such as the instructions given to the jury defining the elements of the offense, to show that the lawfulness of the arrest was actually litigated and necessarily determined by the jury's verdict. Thus, the verdict in the criminal trial does not preclude plaintiff's illegal arrest claim.

Plaintiff pleaded guilty to resisting arrest in April 2010, prior to the Michigan Supreme Court's clarification of M.C.L. 750.81d in *Moreno*. This Court finds that, consistent with other opinions from this district, Plaintiff's excessive force claim is not precluded by his failure to raise excessive force as a defense to his earlier criminal charge because his conviction predates *Moreno*. Moreover, Plaintiff's present lawsuit does not appear to be an attempt to invalidate his prior conviction. Therefore, this Court DENIES Defendants' Motion for Summary Judgment to the extent that it relies on Plaintiff's former resisting arrest conviction to invalidate the present lawsuit.

**Does Governmental Immunity Bar Plaintiff's State Law Assault and Battery Claims?**

Defendants argue that they are entitled to summary judgment on Plaintiff's assault and battery claim because government employees are immune from liability for intentional torts they commit in good faith, during the course of employment, and during the commission of an act which is discretionary and not ministerial. (Def.'s Br. at 19-20, *citing Odom v. Wayne*, 482 Mich. 459, 468 (2008)). Defendants maintain that certain police decisions, like whether to pursue a suspect or wait for backup, are discretionary and cannot be the basis of liability. (Defs.' Br. at 20, *citing Norris v. Lincoln Park Police Officers*, 292 Mich. App. 574, 579 (2011)). Defendants essentially argue that they acted in an objectively reasonable manner such that immunity is warranted.

Plaintiff responds that his assault and battery claim should rise and fall with his Fourth Amendment excessive force claims. This Court agrees. "Governmental actions which would normally constitute intentional torts are protected by governmental immunity *if those actions are*

14

*justified*." *Brewer v. Perrin*, 132 Mich. App. 520, 528 (1984) (emphasis added). Police officers are shielded from conduct that would be considered an intentional tort if the conduct was objectively reasonable under the circumstances. *Sullivan*, 2009 WL 2915787 at *12, *citing VanVorous v. Burmeister*, 262 Mich. App. 467, 482 (2004).

As fully discussed in the section regarding Qualified Immunity, *supra*, there are genuine issues of material fact as to whether Defendants exercised their discretion in good faith, whether Defendants' actions were justified and whether Defendants acted in an objectively reasonable manner. Therefore, as to Defendants' claim of governmental immunity, this Court DENIES Defendants' Motion for Summary Judgment.

**Can Plaintiff Maintain A Claim For Gross Negligence Against Defendants?**

Defendants argue that Plaintiff cannot maintain his claim for gross negligence because it is merely an improper attempt to re-plead his intentional tort claim for assault and battery. (Def.'s Br. at 22). Defendants additionally aver that Plaintiff has no evidentiary support for a gross negligence claim based on the officers placing Plaintiff against the broken barber shop window after his arrest, nor for a claim based on the failure to provide prompt medical care. (Defs.' Reply Br. at 22-23).

Plaintiff maintains that he has a valid claim under Michigan law because government employees are not immune from liability for grossly negligent acts. (Pl.'s Resp. at 15, *citing Poppen v. Tovey*, 256 Mich. App. 351, 356 (2003)). Plaintiff claims the Officers were grossly negligent by failing to provide him with prompt medical care and by placing him in front of a broken glass window.

"Gross negligence is defined by statute as 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.'" *Maiden v. Rozwood*, 461 Mich. 109, 122 (1999),

15

*quoting* MCL 691.1407(2)(c).  If reasonable minds could not differ on the issue of whether the conduct rises to the level of gross negligence, then summary judgment on the gross negligence claim is proper. 18 *Mich. Civ. Jur.*, *Municipal Corporations* § 373, *citing Seldon v. Suburban Mobility Authority for Regional Transp.*, 297 Mich. App. 427 (2012).

First, Plaintiff admits that he was taken to the hospital after he was arrested.  (Pl.'s Dep. Attached to Pl.'s Resp. at Ex. C, p. 53-54).  Plaintiff points to no evidence that indicates there was undue, excessive or even purposeful delay in transporting him to the hospital.  This Court finds that there is no genuine issue of material fact as to whether the Defendant officers acted with gross negligence in failing to provide Plaintiff with medical care.

Next, this Court finds that Plaintiff has not come forth with evidence to establish his claim of gross negligence based on the Officers' alleged placement of him near broken glass.  Plaintiff testified that the Officers, after he was handcuffed, stood him against a big hole in the glass of the barber shop exterior and that the glass sliced his hand open.  (Pl.'s Resp. at Ex. C, p. 52). Significantly, however, Plaintiff cites to no medical records or other evidence corroborating his claim of the cut hand.  (*See* Corroborating Facts, Pl.'s Resp. at 4).  Without more, reasonable minds could not differ as to whether this conduct alone amounts to the level of egregiousness required for a gross negligence claim to succeed.   Thus, this Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's gross negligence count.

**Is There A Genuine Issue Of Material Fact As To Whether The City Of Pontiac Can Be Held Liable For The Officers' Actions Per *Monell*?**

Plaintiff alleges that Defendant City of Pontiac failed to adequately supervise and adequately train its police officers to prevent violations of citizens' constitutional rights.  (Pl.'s Compl. at ¶

16

51(a).

Plaintiff's claim against the City of Pontiac, a municipality, seeks to impose upon the City what is known as *Monell* liability. *In Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978), the United States Supreme Court held that, in order to establish a section 1983 claim against a municipality, a plaintiff must show that an injurious *de facto* policy exists. The *de facto* policy must amount to "deliberate indifference to the rights of persons with whom the [municipal agents] come in contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

A municipality can be held liable for failing to supervise its employees. *Harris*, 489 U.S. at 398. To succeed on a claim for failure to supervise, the plaintiff must prove that: (1) the supervision was inadequate for the tasks the officers were performing; (2) the inadequacy resulted from the municipality's "deliberate indifference"; and (3) the inadequacy caused the injury. *Ellis v. Cleveland Municipal Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

A municipality can also be held liable for failing to train its employees. *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989). "A failure-to-train claim . . . requires a showing of prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013), *quoting Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010).

Defendants appear to argue that no constitutional violation occurred, so the City of Pontiac cannot be held liable for any section 1983 violation. For the reasons previously mentioned, there is a genuine issue of material fact as to whether the Defendant Officers used excessive force on Plaintiff in violation of his Fourth Amendment rights. This Court rejects Defendants' argument

accordingly.

Defendants also argue that the City of Pontiac cannot be held liable under section 1983 for the Defendant Officers' actions because there is no evidence that additional training or supervision of the officers was necessary, or that the City was deliberately indifferent to the need for more supervision or training.  (Def.'s Reply Br. at 6).

Plaintiff responds that the City of Pontiac is liable for failing to supervise its employees because Defendants Morton, Troy and McDonald each testified that they did not receive performance evaluations.  (Pl.'s Resp. at 18; Morton Dep., attached to Pl.'s Resp. at Ex. F p. 22; Troy Dep., attached to Pl.'s Resp. at Ex. A, p. 19; McDonald Dep., attached to Pl.'s Resp. at Ex. J, p. 13). Plaintiff argues that the City of Pontiac's "failure to review its police officers' performance on the job permits officers to continuously violate citizens' constitutional rights, thereby causing severe physical injuries similar to what occurred in the instant matter . . ."  (Pl.'s Resp. at 18).

This Court finds no genuine issue of material fact regarding whether additional training or supervision was obviously necessary, so as to render the City deliberately indifferent to its citizens' welfare for failing to so provide.  The record is devoid of any evidence establishing that the City knew or should have known of an obvious need for more training or supervision.  Plaintiff has failed to come forth with evidence establishing this critical element, which is required for him to establish the City of Pontiac's municipal liability in this matter.  This Court therefore GRANTS Defendant City of Pontiac's Motion for Summary Judgment.

## CONCLUSION & ORDER

For the reasons set forth above, this Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56:

18

1)       All counts against Officers McDonald and Garcia, and the City of Pontiac are

          DISMISSED;

2)       Count III of Plaintiff's Complaint (Gross Negligence) is DISMISSED;

3)       Defendants' Motion for Summary Judgment is denied in all other respects.

**IT IS SO ORDERED.**

S/Sean F. Cox_____
Sean F. Cox
United States District Judge

Dated:  January 14, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 14, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy_____
Case Manager
